UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANDRES GOMEZ,

    Plaintiff,

vs.

COCONUT GROVE CHIROPRACTIC, INC and
YOLANDA LOLAS YARUR REVOCABLE TRUST
DATED OCTOBER 13, 2000

    Defendants.

_____/

**INJUNCTIVE RELIEF SOUGHT**

**COMPLAINT**

Plaintiff, ANDRES GOMEZ ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Defendants COCONUT GROVE CHIROPRACTIC, INC and YOLANDA LOLAS YARUR REVOCABLE TRUST DATED OCTOBER 13, 2000 (hereinafter "Defendants") for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181, *et seq.* ("ADA") the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"), as well as violation of Section 504 of the Rehabilitation Act of 1973, 29.USC § 794 (the "Rehabilitation Act") against Defendant COCONUT GROVE CHIROPRACTIC, INC, and alleges as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. §12181, *et seq.*, based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA (see also, 28 U.S.C. §§2201 and 2201).

2. The Court also has original jurisdiction over the action pursuant to 28 U.S.C. §§1331 and 1343 for Plaintiff's claims arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

3. This is an action for injunctive relief, declaratory judgment and monetary damages.

4. The remedy of monetary damages is sought exclusively under Section 504 of the Rehabilitation Act of 1973 and sought exclusively from Defendant COCONUT GROVE CHIROPRACTIC, INC.

5. Venue is proper in this federal district as all acts complained of occurred in Miami-Dade County, Florida.

## PARTIES

6. Plaintiff, ANDRES GOMEZ is a resident of the State of Florida and this judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act, is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance.

7. Plaintiff uses the term "blind" or "blind person" to refer to persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision, whereas others have no vision.

8. Plaintiff's access to the real property located at 3390 SW 22nd Street (aka Coral Way), Miami, FL 33145 that is listed in the Miami-Dade property appraiser's office with the folio number of 01-4116-009-1200 ("the Facility") and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of these disabilities, and will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations which exist at the Facility, including those set forth in this Complaint.

9. Beginning in 2013, Plaintiff was a patient at Coconut Grove Chiropractic. Coconut Grove Chiropractic has offices located inside the Facility. Plaintiff lives six miles from the Facility.

10. As a patient, Plaintiff has travelled to the Facility approximately three or four times. The previous time Plaintiff travelled to the Facility was March of 2015.

11. In this instance, Plaintiff travelled to the Facility as a patient, encountered the barriers to access at the Facility detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue

to suffer such harm and injury as a result of the illegal barriers to access and Defendants' ADA violations discussed below.

12. Defendant COCONUT GROVE CHIROPRACTIC, INC has a web site with the web site address of www.coconutgrovechiropractic.com. ("web site") The web site is a place of public accommodation and has a nexus with the Facility as information and informational services presented in the web site as many of the services and procedures offered at the Facility are detailed on the web site and appointments at the location can be made on the web site. As such, the web site is a service and public accommodation of Defendants.

13. Under the ADA, all places of public accommodation must ensure that the disabled have full and equal enjoyment of its goods and services by making reasonable modifications to its services.

14. Public policy promotes Internet accessibility for the legally blind.

15. Plaintiff has attempted to utilize the web site for informational purposes, but due to his disability and COCONUT GROVE CHIROPRACTIC, INC failure to have the web site adequately accessible to individuals with visual impairments, was unable to fully do so.

16. Covered entities under the ADA, such as COCONUT GROVE CHIROPRACTIC, INC, that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

17. Defendant, COCONUT GROVE CHIROPRACTIC, INC is a Florida Corporation, and transacts business in the State of Florida and within this

4

judicial district. It operates Coconut Grove Chiropractic, located at 3390 SW 22nd Street (aka Coral Way), Miami, FL 33145, referred to in the Complaint as the Facility and operates the web site. COCONUT GROVE CHIROPRACTIC, INC is the lessee, sub-lessee, lessor and/or operator of the real property and improvements which are the subject of this action.

18. COCONUT GROVE CHIROPRACTIC, INC has discriminated against Plaintiff on the basis of disability in the full and equal enjoyment of the services, facilities, privileges, advantages or accommodations through the Facility and the web site in violation of 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201 by failing to adequately program the web site to accurately and sufficiently integrate with common commercially available screen reader software utilized by Plaintiff and others with visual disabilities.

19. Plaintiff utilizes JAWS Screen Reader software (the "screen reader software"), the most popular screen reader software utilized worldwide.

20. Specifically, the web site discriminates against individuals with visual impairments in the following manner:

    a. On the home page of the website, the "About Us" information is not accessible via keyboard and read by the screen reader software.

    b. On the home page of the website the "About Us" link at the top of the page contains a drop-down menu that contains the following nested links: "Doctors and Staff", "Office Tour", "Gallery", "Testimonials", "Bulletin Board", "Contact Us" and

"Location".  The "About Us" drop down menu is not read by the screen reader software. Thus, a visually impaired individual utilizing screen reader software would not be aware of the "Office Tour, Gallery, Testimonials, Bulletin Board, Contact Us and Location" pages that are available.  While there is a second "About Us" link at the bottom of the home page, that link only links to a page that shows information about the doctor and staff and does not contain the "Office Tour", "Gallery", "Testimonials", "Bulletin Board", "Contact Us" and "Location" information.

c. On the home page of the website, the "Wellness Library" link at the top of the page does not link via keyboard control and is not read by the screen reader software. This link contains the following nested links that are accessible via mouse input only and therefore inaccessible to a visually impaired patient such as Plaintiff: "Health & Chiro Articles", "Subluxation", "Chiropractic Slide Show", "Ask the Experts and Kids & Chiropractic". The screen reader soft does not list any of this nested links.

d. On the home page of the website, the "Patients" link does not via keyboard control and is not read by the screen reader software. This link contains the following nested links that are accessible via mouse input only and therefore inaccessible to a visually impaired patient such as Plaintiff: "Request

6

Appointment", "Services", "First Visit" and "Forms". The screen reader software does not "read" any of these links and therefore the website discriminates against individuals with visual disabilities such as Plaintiff.

e. Every link noted above, are not accessible via the keyboard, also has further nested links that would not be available to a visually impaired individual.

f. The video on home page does not indicate that it is a video, only that it is an embedded graphic.

g. Calendar on home page is not recognized by the screen reader software, thus, is inaccessible to a visually impaired individual visiting the webpage.

21. At all times relevant to this Complaint, Defendant COCONUT GROVE CHIROPRACTIC, INC has received Medicare/Medicaid payments, or other federal funds payments for services rendered to their patients.

22. At all times relevant to this Complaint, Defendant COCONUT GROVE CHIROPRACTIC, INC was either aware of or deliberately indifferent to the violations of the ADA and Section 504 of the Rehabilitation Act of 1973, described in this Complaint at the time the decision was made to locate this medical facility at the Property which was clearly not compliant with the ADA.

23. At all times relevant to this Complaint, Defendant COCONUT GROVE CHIROPRACTIC, INC had opportunities to correct the numerous

exterior, interior and web site ADA violations present at the property but chose not to do so.

24. Defendant, YOLANDA LOLAS YARUR REVOCABLE TRUST DATED OCTOBER 13, 2000 transacts business in the State of Florida and within this judicial district. YOLANDA LOLAS YARUR REVOCABLE TRUST DATED OCTOBER 13, 2000 is the owner and/or operator of the Property.

**COUNT I: VIOLATION OF THE ADA AS TO BOTH DEFENDANTS**

25. Plaintiff reavers the allegations set forth in paragraphs 1 through 24 as though fully stated herein.

26. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. §12101, *et seq*.

27. Congress found, among other things, that:

   (i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

   (ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

   (iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

   (iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing

        facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

  (v)  the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. §12101(a)(1) - (3), (5) and (9).

28. Congress explicitly stated that the purpose of the ADA was to:

  (i)  provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

  (ii)  provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

  (iv)  invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

29. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement the requirements imposed by the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less. 42 U.S.C. § 12181; 28 C.F.R. §36.508(a)

30. The Facility is a public accommodation and service establishment.

31. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA. 29 C.F.R. Part 36. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. §1281, *et seq.*, and 28 C.F.R. §36.508(a).

32. The Facility must be, but is not, in compliance with the ADA and ADAAG.

33. Plaintiff has attempted to and has, to the extent possible, accessed the Facility in his capacity as a patient of COCONUT GROVE CHIROPRACTIC, INC, but could not fully do so because of his disabilities due to the physical barriers to access, dangerous conditions and ADA violations that exist at the Facility and the web site that preclude and/or limit his access to the Facility and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34. Defendant YOLANDA LOLAS YARUR REVOCABLE TRUST DATED OCTOBER 13, 2000 has no operational control or liability under the ADA regarding the web site.

35. Plaintiff intends to visit the Facility and the web site again in the very near future as a patient in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at

the Facility and the web site, but will be unable to fully do so because of his disability and the barriers to access, conditions and ADA violations that exist at the Facility and the web site that preclude and/or limit his access to the Facility and web site and/or services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

36. Defendants have discriminated against Plaintiff and others with disabilities, by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility and web site, as prohibited by, and by failing to remove barriers as required by 42 U.S.C. §12182, and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are compelled to remove all barriers that exist at the Facility and web site, including those specifically set forth herein, and make the Facility and web site accessible to and usable by persons with disabilities, including Plaintiff.

37. Defendants have discriminated against Plaintiff by failing to comply with the above requirements. A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed and preclude and/or limit Plaintiff's ability (because of his disability) to access the Facility and web site and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility and Property, include:

**ACCESSIBLE ELEMENTS**

a. One or more accessible parking spaces are not adequately marked and are in violation of section 502.1 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to locate an accessible parking space.

b. Due to the presence of a parking stop, the access aisle has excessive vertical rise in violation of section 303.2 of the 2010 ADAAG standards. Moreover, the presence of a parking stop encourages individuals to park in the access aisle. This violation made it dangerous and difficult for Plaintiff to access public features of the Property.

c. The Property has a ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:10 in violation of section 405.2 of the 2010 ADAAG regulations. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

d. The accessible route leading from the accessible parking space to the accessible entrances has a rise greater than 6 inches but does not have handrails complying with section 505 of the 2010 ADAAG standards, this is a violation of section 405.8 of the 2010 ADAAG standards. This violation made it difficult for Plaintiff to access the units of the Property.

e. There is a 2" vertical rise at the ramp that is not beveled in violation of section 303.3 of the 2010 ADAAG regulations. This violation made it difficult for Plaintiff to access the units of the Property.

    f. The ground surfaces of the ramp have vertical rises in excess of ¼ inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Section 302 and 303 of the 2010 ADAAG standards. This violation made it dangerous and difficult for Plaintiff to access the units of the Property.

38. The above listing is not to be considered all-inclusive of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Facility and web site.

39. All of the above violations are readily achievable to modify in order to bring the Facility and web site into compliance with the ADA.

40. The removal of the barriers to access and conditions present at the Facility and web site is readily achievable because the nature and cost of the modifications are relatively low and the Defendants have the financial resources to make the necessary modifications.

41. Upon information and belief, the Facility and web site has been altered since 2010.

42. In instances where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 29 can be applied to the 1991 ADAAG standards.

43. Plaintiff has attempted to gain access to the Facility and web site in his capacity as a patient, but because of his disability has been denied full access to, and has been denied the benefits of services, programs and activities of the Facility and the web site, and has otherwise been

discriminated against and damaged by Defendants, because of the barriers, conditions and ADA violations set forth above, and expect to be discriminated against in the near future by Defendants because of Plaintiff's disabilities, unless and until Defendants are compelled to remove the unlawful barriers and conditions and comply with the ADA.

44. The removal of the barriers, dangerous conditions and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

45. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the barriers, dangerous conditions and ADA violations that exist at the Facility and Property, including those set forth herein. The relief requested serves the public interest and the benefit to Plaintiff and the public far outweigh any detriment to Defendants.

46. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned counsel reasonable attorney's fees, costs, and expenses from Defendants pursuant to 42 U.S.C. § § 12205 and 12117.

47. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including an order to alter the subject

Facility and Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA.

WHEREFORE, Plaintiff respectfully requests that this Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices, ordering Defendants to remove the barriers to access and alter the subject Facility to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, required Defendant COCONUT GROVE CHIROPRACTIC, INC to modify the web site to bring it into compliance with the ADA and award Plaintiff his reasonable attorneys' fees, litigation expenses and costs.

**COUNT II – Violation of the Rehabilitation Act of 1973 against COCONUT GROVE CHIROPRACTIC, INC**

48.   Plaintiff reavers the allegations set forth in paragraphs 1 through 24 and 26 through 47 as though fully stated herein.

49.   Prior to COCONUT GROVE CHIROPRACTIC, INC being located at the Facility, COCONUT GROVE CHIROPRACTIC, INC intentionally discriminated, or at a minimum, was deliberately indifferent to the discrimination of individuals with visual disabilities, like Plaintiff, by choosing to locate its medical offices in a location that clearly violated multiple aspects of the ADA, the Rehabilitation Act of 1973 and ADAAG relating to visual disabilities.

50.   COCONUT GROVE CHIROPRACTIC, INC has intentionally discriminated against Plaintiff and others with visual and mobility related

disabilities, by choosing a location it knew to be non-compliant with the ADA relating to barriers to access impacting the mobility impaired as well as implementing a web site that is not adequately accessible/usable to the most popular screen reader software, thus denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility and Property.

51. COCONUT GROVE CHIROPRACTIC, INC has never requested from YOLANDA LOLAS YARUR REVOCABLE TRUST DATED OCTOBER 13, 2000, or any other prior landlord or property manager who has operational control over the Property that the barriers to access found throughout the Property be corrected despite servicing numerous individuals with visual and mobility related disabilities such as the Plaintiff.

52. By being intentionally indifferent to the plight of the visual and mobility impaired, COCONUT GROVE CHIROPRACTIC, INC has imposed an eligibility criteria for its patients, this eligibility criteria tends to screen out an individual with mobility related disabilities from fully enjoying the services and facilities COCONUT GROVE CHIROPRACTIC, INC provides.

53. Moreover, COCONUT GROVE CHIROPRACTIC, INC has failed to take such steps as may be necessary to ensure that no individual with a visual and mobility related disability, like Plaintiff, is excluded, denied services or otherwise treated differently than other non-disabled individuals because of the absence of auxiliary aids and services.

54. Furthermore, COCONUT GROVE CHIROPRACTIC, INC has a website that is inaccessible to the visually impaired.

55. The intentional nature of the discrimination COCONUT GROVE CHIROPRACTIC, INC, has wrought on Plaintiff, stems in part from the fact that COCONUT GROVE CHIROPRACTIC, INC is a complex business owner who interacts with individuals with visual and mobility related disabilities on a regular basis.  Any failure on the part of COCONUT GROVE CHIROPRACTIC, INC to choose a location that complies with the ADA, modify the property to comply with the ADA, configure the web site to adequately work with the most popular screen reader software or for its own policies and procedures to comply with the ADA, ADAAG or Rehabilitation Act relating to barriers to access impacting individuals with mobility-related disabilities, like Plaintiff, can only be the result of an animus or distaste against individuals with visual and mobility related impairments.

56. The intentional discrimination of the Plaintiff by COCONUT GROVE CHIROPRACTIC, INC has caused Plaintiff to suffer emotional distress and damages in the past and he continues to suffer distress and damages in the future due to COCONUT GROVE CHIROPRACTIC, INC's intentional discrimination.

57. Moreover, Plaintiff's intent to return to the Facility and Property to have an adjustment is giving him further emotional distress as he is concerned about his safety when he intends to return.

58. Plaintiff's intent to return stems, in part, from a desire not to be bullied or cringe in the face of discrimination, so despite his anxiety Plaintiff desires to return.

59. In accordance with the 11th Circuit's opinion of *Shelly vs. MRI Radiology Network,* 505 F.3d 1173 (11th Cir. 2007), Plaintiff seeks damages for mental and emotional distress caused by the personal humiliation, mental anguish and suffering caused by the intentional discrimination of COCONUT GROVE CHIROPRACTIC, INC. These emotional damages are available to make whole the victims of violations of § 504 of the Rehabilitation Act.

60. Plaintiff further seeks a declaratory judgment that the COCONUT GROVE CHIROPRACTIC, INC's inactions, policies and practices violate the Plaintiff's rights under section 504 of the Rehabilitation Act by discriminating against him on the basis of his disability.

WHEREFORE, Plaintiff respectfully requests that this Court issue a permanent injunction enjoining COCONUT GROVE CHIROPRACTIC, INC from continuing its discriminatory practices, ordering COCONUT GROVE CHIROPRACTIC, INC to seek removal of the physical barriers to access and alter the subject Facility to make it readily accessible to and useable by individuals with disabilities to the extent required by Section 505 of the Rehabilitation Act of 1973, ordering Defendant COCONUT GROVE CHIROPRACTIC, INC to modify the web site to bring it into compliance with the ADA entering a declaratory judgment asserting that COCONUT GROVE CHIROPRACTIC, INC's practices violate the Plaintiff's rights under section 504

of the Rehabilitation Act by intentionally discriminating against him on the basis of his disability, compensate Plaintiff for mental and emotional distress damages and award Plaintiff his reasonable attorneys' fees, litigation expenses and costs.

Respectfully submitted this 2nd day of June, 2015.

/s/ Douglas S. Schapiro
Douglas S. Schapiro
Fla. Bar #54538
The Schapiro Law Group, P.L
Attorney for Plaintiff
21301 Powerline Road
Suite 106
Boca Raton, FL 33433
Tele: (561) 807-7388
Fax: (561) 807-7198
Email: schapiro@schapirolawgroup.com